O'BRIEN, Plaintiff in error, vs. THE STATE, Defendant in error.*

*April 11—May 6, 1952.*

* Motion for rehearing denied, without costs, on June 20, 1952.

574

*J. E. O'Brien* of Fond du Lac, plaintiff in error, *in pro. per.*

For the defendant in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

MARTIN, J.  We have quoted at length from the bill of exceptions because many of the facts alleged by the plaintiff in error both in his brief and in oral argument are not borne out by the record.  Mr. O'Brien has practiced law in this state for many years and asserts that his respect for the courts maintains even in these troubled times.  The remarks made by Mr. O'Brien, as quoted above from the record, speak for themselves.

We might say that some of the court's comments were uncalled for and that it should not have allowed the exchange of provocative remarks to continue for as long as it did. However, the highly improper conduct of the plaintiff in error,—as well as that of his wife in calling the witness, asking her to testify favorably in behalf of her husband's client, and later upbraiding her for testifying as she did,— was sufficient to provoke any court.

Contempt is defined in 12 Am. Jur., Contempt, p. 389, sec. 2, as follows:

"In its narrower and more usual sense . . . contempt has been defined as a despising of the authority, justice, or dignity of the court. Generally speaking, he whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during a litigation, or otherwise tends to impede, embarrass, or obstruct the court in discharge of its duties is guilty of contempt."

And at p. 396, sec. 11:

"It is peculiarly the duty of an attorney to maintain the respect due to courts and judicial officers, and any breach of this duty is a contempt."

The contention is made, however, that the court had no jurisdiction to find contempt, "There being nothing concerning the divorce before the court, and it being an inquiry into a collateral matter. . . ."

Sec. 256.03, Stats., provides in part:

"256.03 Every court of record shall have power to punish, as for a criminal contempt, persons guilty of either of the following acts and no other:

"(1) Disorderly, contemptuous, or insolent behavior committed during its sittings, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due its authority."

There is no question that Mr. O'Brien's contemptuous behavior occurred during a proceeding duly had before the court. The transcript of the proceedings is entitled in the case of Andrews v. Andrews, and shows that Richard Andrews, the defendant in that case, had given testimony immediately preceding Mrs. Schmeck, who was then recalled to the stand and examined as a witness in the divorce case. After some testimony as to what she had learned from Mrs. Andrews since her previous appearance on the witness

stand, the court asked, "Now, I understand that you complained that you were rather mistreated because of your testimony?" and proceeded to inquire into the circumstances of such mistreatment. It was clear from her testimony that Mrs. O'Brien, who is also her husband's secretary, had attempted to influence or interfere with the witness' testimony before the trial. It was not only the right of the court, but its duty, to investigate allegations of that nature in the interest of protecting witnesses from intimidation and maintaining such order as would insure honest testimony in the case. See *Rubin v. State* (1927), 192 Wis. 1, 211 N. W. 926.

No suspension or adjournment was had during this inquiry. The court was still in session, and the colloquy which ensued between the court and Mr. O'Brien unquestionably occurred "during its sittings, in its immediate view and presence." The court clearly had jurisdiction to find that Mr. O'Brien's remarks were contemptuous; they certainly tended "to impair the respect due its authority."

Plaintiff in error further contends that he was entitled to a trial as to the existence of the rumor referred to by him. There was no need to litigate the facts regarding the rumor. The only question was whether Mr. O'Brien's behavior was contemptuous. In so finding, the court followed the procedure outlined in the statutes:

Sec. 256.04 "Contempts committed in the immediate view and presence of the court may be punished summarily; in other cases the party shall be notified of the accusation and have a reasonable time to make his defense."

Sec. 256.05, Stats., provides that the particular circumstances of the offense shall be set forth in the warrant of commitment. This was done.

Sec. 256.06, Stats., provides that punishment for contempt may be by fine or imprisonment in the county jail, or both, but that the fine shall not exceed $250 nor the imprisonment

thirty days. The court erred in fixing the imprisonment at sixty days, and the judgment must be corrected in this regard, but the period of imprisonment is actually immaterial since plaintiff in error has posted bail in a sum which is sufficient to cover the fine.

It is true that if action were brought under sec. 256.07, Stats., plaintiff in error would be entitled to have formal charges made against him, indictment, information, and a jury trial, but this is not such an action. The procedure followed was the summary procedure outlined by statute, and is entirely proper, as was held in *Rubin v. State, supra,* pp. 12, 14, where the court, in discussing sec. 256.04, said:

"This is but a legislative declaration of procedure that has always obtained in the courts. According to this, in cases of contempt committed without the view of the court, the party shall be notified of the accusation and have a reasonable time to make a defense. Not so, however, in cases of contempts committed in the immediate view and presence of the court. They may be punished summarily. The parties are not entitled to be notified of the accusation, nor a reasonable time in which to make their defense. Such has been the practice from time immemorial. . . .

"It may be conceded that this method of dealing with direct contempt is an anomaly in our law, which guarantees due process of law. However, it grows out of necessity and is deemed essential, in order to enable courts to preserve their existence and power and to confer upon society the rights which they are instituted to protect."

*By the Court.*—The judgment is modified by reducing the maximum period of imprisonment to thirty days, and as so modified, is affirmed.