STATE of Wisconsin, Plaintiff-Appellant,

v.

Daniel J. BECK, Defendant-Respondent.

Court of Appeals

*No. 96–0790. Submitted on briefs August 12, 1996.—Decided September 12, 1996.*

(Also reported in 555 N.W.2d 145.)

For the plaintiff-appellant the cause was submitted on the briefs of *Timothy C. Baxter*, district attorney of Crawford County and *Michael A. Lutz* of the *Department of Natural Resources* of Madison.

For the defendant-respondent the cause was submitted on the brief of *Mark A. Peterson* of *Peterson, Antoine & Peterson, S.C.* of Prairie du Chien.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

DYKMAN, P.J.   On July 7, 1995, Daniel Beck was clamming in the Mississippi River on the west side of the main channel of the river in Iowa waters. Wisconsin Department of Natural Resources conservation wardens cited Beck for possession of undersize clam shells in violation of WIS. ADM. CODE § NR 24.09(1)(a).[1] Prior to trial, Beck moved to dismiss the case for lack of personal jurisdiction. The circuit court agreed that it lacked jurisdiction and dismissed the case. The State appeals.

---

[1] The citation actually listed a violation of § 29.38, STATS., which enabled the DNR to enact WIS. ADM. CODE § NR 24.09. The State admits that it may need to amend the citation. This issue was not raised on appeal.

Personal jurisdiction is a question of law that we review *de novo. Marsh v. Farm Bureau Mut. Ins. Co.,* 179 Wis. 2d 42, 52, 505 N.W.2d 162, 165 (Ct. App. 1993). To determine whether Crawford County has personal jurisdiction over Beck, we must interpret both Wisconsin's constitution and statutes. We interpret provisions of the Wisconsin Constitution and Wisconsin statutes *de novo. Polk County v. State Pub. Defender,* 188 Wis. 2d 665, 674, 524 N.W.2d 389, 392 (1994); *State v. Eichman,* 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990).

The Wisconsin Constitution sets the western boundary of the state at "the center of the main channel" of the Mississippi River. WIS. CONST. art. II, § 1. As a general rule, Wisconsin's jurisdiction extends "to all places within the boundaries declared in article II of the constitution." Section 1.01, STATS. Under this general rule, a Wisconsin court would not have jurisdiction over Beck.

The United States Congress, however, has extended to Wisconsin concurrent jurisdiction over the boundary waters of the Mississippi River. The act of Congress admitting Wisconsin to the Union provides in relevant part:

> [T]he said State of Wisconsin shall have concurrent jurisdiction on the Mississippi, and all other rivers and waters bordering on the said State of Wisconsin, so far as the same shall form a common boundary to said State and any other State or States now or hereafter to be formed or bounded by the same.

Act of Aug. 6, 1846, 9 Stat. 56, 57.[2] Wisconsin has recognized this concurrent jurisdiction. Our constitution provides: "The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same." WIS. CONST. art. IX, § 1. In *State v. Nelson*, 92 Wis. 2d 855, 285 N.W.2d 924 (Ct. App. 1979), we held that Wisconsin had concurrent jurisdiction over a violation of Wisconsin's administrative code that occurred on the Minnesota side of the Mississippi River.[3]

Wisconsin cannot exercise its concurrent jurisdiction over all offenses occurring on the Mississippi River, however. In *Nelson*, we stated:

> [C]oncurrent jurisdiction means that two powers have jurisdiction over one and the same place. This is not to be construed to mean that one state has authority to punish an act in violation of its laws beyond its territory where the act is not prohibited by the laws of the neighboring state. Where the two states have *similar* laws, however, concurrent

---

[2] A similar provision is found in the act admitting Iowa to the Union. *See* Act of Mar. 3, 1845, 5 Stat. 742, 743.

[3] In *Nielsen v. Oregon*, 212 U.S. 315, 320 (1909), the United States Supreme Court stated the purpose behind the grant of concurrent jurisdiction to states bordered by common waters:

> Undoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction, was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary sometimes changing by reason of the shifting of the channel.

> jurisdiction allows a conviction in either state for violation of such laws.

*Id.* at 858-59, 285 N.W.2d at 927 (emphasis added).

In their briefs, the State and Beck debate whether the laws of Wisconsin and Iowa are similar within the meaning of *Nelson*. The State argues that similar in this context means "nearly corresponding; resembling in many respects; somewhat like; having a general likeness." *See* BLACK'S LAW DICTIONARY 1383 (6th ed. 1990). We disagree.

Our conclusion in *Nelson* was based on the United States Supreme Court's decision in *Nielsen v. Oregon*, 212 U.S. 315 (1909). In construing the concurrent jurisdiction of Oregon and Washington over the Columbia River,[4] the *Nielsen* Court stated that when an act is "*prohibited and punishable by the laws of both states*, the one first acquiring jurisdiction of the person may prosecute the offense." *Id.* at 320 (emphasis added).[5] The Court concluded that a state which prohibits an act cannot prosecute and punish for that act when it is committed within the territorial limits of a neighboring state that authorizes the act. *Id.* at 320-21.

If we were to use the Black's Law Dictionary definition of "similar," we would contravene *Nielsen's* holding. A Wisconsin law could be more restrictive than an Iowa law, yet still resemble the Iowa law in

---

[4] The act granting Oregon concurrent jurisdiction over the Columbia River is similar to the act granting Wisconsin concurrent jurisdiction over the Mississippi River. *See* Act of Feb. 14, 1859, 11 Stat. 383, 383.

[5] This concurrent jurisdiction extends to "civil as well as criminal matters," and applies to offenses *malum prohibitum* as well as *malum in se. Nielsen v. Oregon*, 212 U.S. 315, 320 (1909).

many respects. In this situation, Wisconsin would have concurrent jurisdiction under *Nelson* because the laws are similar, but may not have concurrent jurisdiction under *Nielsen* because the act prohibited by the laws of Wisconsin might not be prohibited by the laws of Iowa. Certainly the *Nelson* court did not intend similar to be defined in such a way as to contravene United States Supreme Court authority.

Instead, we conclude that, for purposes of *Nelson*, a Wisconsin law is similar to an Iowa law if the act sought to be punished by Wisconsin is also a punishable act in Iowa. Using this definition, we construe the language of *Nelson* in a manner consistent with *Nielsen*. The laws are similar because they will punish the same offense, and *Nielsen* is satisfied because the offense will be punishable in both states.

Therefore, we need to determine whether the act for which Wisconsin sought to punish Beck was also punishable in Iowa. Beck's citation stated that he possessed undersize mapleleaf, pimpleback, threeridge and washboard clams. Both WIS. ADM. CODE § NR 24.09 and IOWA ADMIN. CODE r. 571-87.1(2) (1992)[6] provide minimum size requirements for commercially

---

[6] The State requests that we take judicial notice of this Iowa Administrative Code section. The State relies on § 891.01(1), STATS., which stated, "Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." However, § 891.01 was repealed by supreme court order effective January 1, 1974. *See* WIS. STAT. ANN. § 891.01 (West Supp. 1995).

The Uniform Judicial Notice of Foreign Law Act is now codified at § 902.02, STATS. Section 902.02(1) is substantially identical to the former § 891.01(1), STATS., and subsection (2)

harvested clams. Both Wisconsin and Iowa place the minimum legal size for mapleleaf and pimpleback clams at two and three-quarter inches and the minimum legal size for washboard clams at four inches. We conclude that with regard to mapleleaf, pimpleback and washboard clams, Wisconsin's law is similar to Iowa's.

The only difference between Iowa and Wisconsin law relevant to this case is contained in the requirements for threeridge clams. Wisconsin places the minimum legal size at two and five-eighths inches, while Iowa places the minimum legal size at two and three-quarter inches. However, because Wisconsin's law is less restrictive than Iowa's law, a violation of Wisconsin's law will always be a violation of Iowa's law and, for purposes of *Nelson*, the laws are similar. Therefore, Wisconsin has concurrent jurisdiction.

Beck argues that *Nelson* is distinguishable because Nelson was a Wisconsin resident and was apprehended when he returned to Wisconsin, while Beck is an Iowa resident and never entered Wisconsin waters. We disagree. *Nelson* did not conclude that Wisconsin had concurrent jurisdiction over Nelson because he was a Wisconsin resident and was apprehended when he returned to Wisconsin; rather, Wisconsin had jurisdiction over Nelson because "[h]e was taking fish from the boundary waters in a manner prohibited by both states." *Nelson*, 92 Wis. 2d at 859, 285 N.W.2d at 927.

Beck also argues that because the State did not introduce the Iowa law at the motion to dismiss, the State is not allowed to introduce Iowa law here for our

provides that this court "may inform itself of such laws in such manner as it may deem proper." We have done so.

471

review. Beck maintains that "[i]t is a general rule that issues not raised at trial prior to an appeal cannot be raised on appeal because only that which was ordered as final and introduced in the trial phase is reviewable on appeal." Beck does not cite to any legal authority supporting his position, thus not considering the general rule that we will not consider arguments unsupported by references to legal authority. *State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 378 (Ct. App. 1980). Nonetheless, Beck's argument fails because an exception to the general rule to which he refers is made for questions of law that merit discussion. *Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). Whether the states' laws are similar is a question of law that we should address.

Our analysis does not end with our conclusion that a Wisconsin court may exercise jurisdiction over Beck. We must also determine whether Crawford County is the proper venue for this action. The provisions of the Wisconsin Administrative Code regulating clam size were promulgated under § 29.38(8), STATS.[7] As a general rule, all actions to recover forfeitures for violations of administrative rules promulgated under § 29.39(8) "shall be heard in the circuit court for the county where the offense occurred." Section 23.50(2), STATS. Under this general rule, Crawford County would not be the proper venue because the alleged offense did not occur in Crawford County.

---

[7] Section 29.38(8), STATS., provides in relevant part: "RULES. The department may promulgate rules governing clamming and the clamming practices of commercial clam shellers, clam helpers, clam buyers and assistant clam buyers and other related matters . . . ."

However, § 23.90(5), STATS., provides, "If an offense is committed on boundary waters at a place where 2 or more counties have common jurisdiction under s. 2.03 or 2.04 or under any other law, the prosecution may be in either county." Under § 2.04, STATS., Crawford County has jurisdiction in common over all·offenses committed on the Mississippi River.[8] Therefore, the prosecution may take place in Crawford County under § 23.90(5).

Section 23.90(5), STATS., also provides, "The county whose process against the offender is first served shall be conclusively presumed to be the county in which the offense was committed." There is no evidence that a county other than Crawford County first served process against Beck for his alleged possession of undersized clams. Therefore, we presume that the offense was committed in Crawford County.

*By the Court.*—Order reversed and cause remanded.

---

[8] Section 2.04, STATS., provides: "The counties now or hereafter organized on the easterly shore of the Mississippi river shall have jurisdiction in common of all offenses committed on said river. . . ." Crawford County is on the easterly shore of the Mississippi River.