Cynthia A. Schultz, Plaintiff-Appellant,†

The Animal Lobby, Inc., Plaintiff-Co-Appellant,††

v.

Charles J. Sykes, Journal Broadcast Group, Inc. and Journal Sentinel, Inc., Defendants-Respondents.

Court of Appeals

*No. 00–0915. Submitted on briefs June 11, 2001.—Decided October 4, 2001.*

2001 WI App 255

(Also reported in 638 N.W.2d 604.)

† Petition to review denied 1-29-02.
†† Petition to review denied 1-29-02.

750

752

753

754

755

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert E. Sutton* of Milwaukee, and *Ralph J. Ehlinger* of *Ehlinger Law Office, LLC*, of counsel, Germantown.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John R. Dawson, James L. Huston, Paul Bargren* and *Nicole A. Klemz* of *Foley & Lardner*, Milwaukee.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. DYKMAN, J. Cynthia A. Schultz and The Animal Lobby, Inc. (ALI) sued Charles J. Sykes, Journal Broadcast Group, Inc., and Journal Sentinel, Inc.,[1] for defamation. The circuit court dismissed the plaintiffs' claims and awarded attorney fees to the defendants after it found that Schultz had attempted to suborn perjury from a witness. On appeal, Schultz and ALI assert that the circuit court: (1) was without authority to hold an evidentiary hearing, make credibility determinations and then dismiss their suit and award attorney fees and costs; (2) erred when it ruled that Schultz and ALI were limited purpose public figures; (3) erred when it granted summary judgment to the Journal on seventy-eight of their claims; and (4) violated the rights of ALI when it sanctioned ALI for Schultz's misconduct.

¶ 2. We conclude that the circuit court had inherent authority to both dismiss Schultz's claims and award attorney fees to the Journal as a sanction for her misconduct. Circuit courts are bestowed with those powers necessary to maintain their dignity, transact their business, and accomplish the purposes of their existence. Because ensuring the truthful disclosure of facts is so central to both the court's dignity and the purpose of its existence, circuit courts must have the power to sanction parties if they attempt to suborn perjury from witnesses. Further, this power is not extinguished any time there is a disputed issue of fact; otherwise courts would become powerless to stop abuses of the judicial process whenever a party guilty of

---

[1] For the sake of brevity and because they have filed a joint brief, we will refer to the respondents collectively as "the Journal" unless otherwise noted.

misconduct denied his or her wrongdoing. Although the circuit court's dual sanction of dismissal and attorney fees was severe, its finding that Schultz had attempted to suborn perjury from a witness was not clearly erroneous, and therefore the court did not erroneously exercise its discretion when it chose to sanction Schultz with both dismissal and an award of attorney fees. We therefore need not decide whether the circuit court erred in determining that Schultz was a limited purpose public figure or in granting partial summary judgment to the Journal.

¶ 3. However, because the circuit court did not consider whether Schultz's conduct could be imputed to ALI, and the record does not indicate with specificity the extent to which Schultz's and ALI's identities overlap, we remand to the circuit court to consider this issue.

## I. Background

¶ 4. Cynthia A. Schultz is the president of The Animal Lobby, Inc., an animal advocacy organization. Charles J. Sykes is a radio talk show host in Milwaukee, and Journal Broadcast Group, Inc., is his employer. Journal Sentinel, Inc. is the publisher of *The Milwaukee Journal Sentinel.* On January 28, 1998, Schultz and ALI sued Sykes, Journal Broadcast, and Journal Sentinel for defamation. Among other things, the complaint alleged that Sykes on his radio show and Journal Sentinel in newspaper articles made defamatory statements about both Schultz and ALI, implicating them in the theft of two Gordon Setter dogs in January 1996, and accusing them of paying to have another dog killed for political purposes.

¶ 5. The Journal moved for summary judgment, which the trial court granted in part but denied with

respect to two claims. Several months later, the Journal moved to dismiss the complaint as a sanction, alleging that Schultz had committed perjury and had attempted to suborn the perjury of a witness. Among its allegations, the Journal claimed that Schultz had offered to pay Clary Engel to provide her with a false alibi for the day of the dognapping and to testify falsely that he heard Sykes making defamatory statements about Schultz on the radio and, as a result, had a lower opinion of her. The Journal alleged that Schultz attempted to suborn perjury from Engel in both Schultz's defamation suit and in a criminal case against Schultz, in which she was charged with dognapping.[2]

¶ 6. The trial court scheduled an evidentiary hearing, to begin on January 10, 2000. During the hearing, which lasted several days, both sides offered exhibits and called witnesses to give testimony, and each witness was subject to direct and cross-examination. At the close of the hearing, the circuit court concluded that there was clear and convincing evidence that Schultz had attempted to suborn perjury from Engel. Finding that an attempt to suborn perjury is "serious" and that it "goes to the very heart of the

---

[2] Dognapping is prohibited by Wis. Stat. § 951.03 (1995–96), which provides: "No person may take the dog or cat of another from one place to another without the owner's consent or cause such a dog or cat to be confined or carried out of this state or held for any purpose without the owner's consent." The dognapping charges against Schultz were ultimately dropped.

All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

judicial process," the court, citing its inherent authority, dismissed the suit as a sanction for Schultz's misconduct.

¶ 7. The Journal then moved under WIS. STAT. § 814.025[3] for attorney fees. After another hearing, the trial court concluded that Schultz's and ALI's claims were not frivolous under § 814.025, but that costs and attorney fees incurred by the Journal in prosecuting its motion to dismiss could be awarded under the court's inherent authority. In addition, the court stated that Schultz and ALI would be liable for the Journal's fees and costs "[a]s long as this issue is alive, until there is a final judgment entered from which no appeal is taken." The court noted that the purpose of awarding fees was "both to penalize the offender and also deter future misconduct." After a hearing on the reasonableness of the Journal's attorney fees, the court entered judgment for the Journal in the amount of $168,944.97, for which Schultz and ALI would be jointly and severally liable. Schultz and ALI appeal.

## II. Analysis

### A. Standard of Review

¶ 8. Although Schultz and ALI assert that the proper standard of review in this case is de novo, it is well settled that we review a circuit court's decision to

---

[3] WISCONSIN STAT. § 814.025(1) provides: "If an action or special proceeding commenced or continued by a plaintiff . . . is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees."

impose sanctions, as well as the particular sanction it chooses, for an erroneous exercise of discretion. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991); *Kinship Inspection Service Inc., v. Newcomer*, 231 Wis. 2d 559, 573, 605 N.W.2d 579 (Ct. App. 1999); *Garfoot v. Fireman's Fund Ins. Co.*, 228 Wis. 2d 707, 717, 599 N.W.2d 411 (Ct. App. 1999). Accordingly, we will affirm the trial court's decision if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion. *Garfoot*, 228 Wis. 2d at 717. The issue is not whether we, as an original matter, would have imposed the same sanction as the circuit court; it is whether the circuit court exceeded its discretion in imposing the sanction it did. *See Kinship*, 231 Wis. 2d at 573.

### B. Dismissal

1. Authority to Dismiss Case for Attempted Suborna- tion of Perjury

¶ 9. Wisconsin appellate courts have affirmed the power of circuit courts to impose dismissal as a sanction for litigation misconduct. *See, e.g., Johnson*, 162 Wis. 2d at 273–74; *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 543, 535 N.W.2d 65 (Ct. App. 1995). *Cf. Chevron Chemical Co. v. Deloitte & Touche*, 176 Wis. 2d 935, 946, 501 N.W.2d 15 (1993) (court has authority to enter default judgment as a sanction). Because dismissal is such a harsh sanction, however, the supreme court has held that dismissal is proper only when the plaintiff has acted in bad faith or has engaged in egregious miscon- duct. *Johnson*, 162 Wis. 2d at 275.

¶ 10. Schultz and ALI point out that in Wisconsin cases where a sanction of dismissal was upheld, a statute authorized the sanctions in each case, and that there is no such statute authorizing dismissal for attempted subornation of perjury. While we agree there is no statute in Wisconsin authorizing the circuit court to dismiss this case, case law is clear that a court's power to sanction does not derive from the statutes alone. Rather, circuit courts may also sanction parties for misconduct under their inherent authority. *See Johnson*, 162 Wis. 2d at 273–74 (noting that courts have inherent authority to sanction parties for failure to prosecute, failure to comply with procedural statutes or rules, and for failure to obey court orders); *Schaefer v. Northern Assurance Co. of Am.*, 182 Wis. 2d 148, 162, 513 N.W.2d 615 (Ct. App. 1994) (same). *See also Lee v. LIRC*, 202 Wis. 2d 558, 562, 550 N.W.2d 449 (Ct. App. 1996) (concluding that court had inherent authority to dismiss case because the plaintiff had failed to file a brief).

¶ 11. The supreme court recently discussed the scope of courts' inherent powers in *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 595 N.W.2d 635 (1999). In *Davis* the court stated that inherent powers are those "which must necessarily be used to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *Id.* at 747 (internal quotations omitted). Therefore, they include those powers that courts need to "maintain their dignity, transact their business, []or accomplish the purposes of their existence." *Id.* at 748 (internal quotations omitted).

¶ 12. There are few, if any, functions of a circuit court more vital in maintaining its dignity or accom-

plishing the purposes of its existence than ensuring the truthful disclosure of facts. When parties attempt to influence witnesses to lie under oath, this at best interferes with the court's ability to impartially adjudicate the instant case, and at worst can undermine both the opposing party's and the public's faith in the integrity of the judiciary. For courts to effectively fulfill their role as impartial arbiters of justice, parties who come to the courts as either plaintiffs or defendants must have confidence that they will be treated fairly and honestly, both by the court and by the opposing party. Without such confidence, our commitment to the rule of law itself is threatened. Accordingly, we believe that a court must be empowered to protect itself from those egregious practices which threaten the dignity of the judicial process. Because an attempt to suborn perjury undoubtedly threatens this dignity, we conclude that circuit courts have inherent authority to sanction with dismissal a party who has attempted to suborn perjury from a witness.

¶ 13. Federal and out-of-state case law support our conclusion. *See, e.g., Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944) ("Had the District Court learned of the fraud . . . it would have been warranted in dismissing [the plaintiff's] case."); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 489 (9th Cir. 1991) (upholding dismissal with prejudice as a sanction for falsifying deposition testimony); *Cox v. Burke*, 706 So.2d 43, 47 (Fla. Dist. Ct. App. 1998) (holding that dismissal of case is proper where party has engaged in fraud); *Rockdale Mgt Co., Inc. v. Shawmut Bank, N.A.*, 638 N.E.2d 29, 32 (Mass. 1994) (upholding dismissal for proferring forged document, providing misleading answers to interrogatories, and giving false deposition testimony).

765

¶ 14. Schultz and ALI argue that dismissal is proper only when the plaintiff acts in bad faith, and that, here, "a finding of bad faith is impossible since the case was not frivolous." Although we agree that Wisconsin permits dismissal as a sanction for misconduct only where the plaintiff has acted in bad faith or engaged in egregious acts of misconduct, we do not agree that "frivolous" and "bad faith" are interchangeable terms. Rather, bad faith " 'consists of a conscious attempt to affect the outcome of the litigation or a flagrant, knowing disregard of the judicial process.' " *Garfoot*, 228 Wis. 2d at 719 (quoting *Milwaukee Constructors II v. Milwaukee Metro. Sewerage Dist.*, 177 Wis. 2d 523, 533, 502 N.W.2d 881 (Ct. App. 1993)); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980) ("[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."). Subornation of perjury is a flagrant and knowing disregard of the judicial process. Therefore, we cannot conclude that the circuit court misused its discretion in determining that such conduct warranted dismissal.

¶ 15. Schultz and ALI also suggest that even if dismissal would be appropriate in some cases involving an attempt to suborn perjury, it is not proper here because the perjury allegation was not relevant to the issues being tried. In essence, Schultz is arguing that because Engel was not a crucial witness in establishing her claims, she should not be punished if she asked him to lie. The circuit court did not accept Schultz's assertion that Engel was an unimportant witness, and, we believe, with good reason. Even if we assume, however, that Engel would not have been an important witness, we do not consider that to be a controlling factor in

deciding whether the circuit court had authority to dismiss this lawsuit. A circuit court is not required to impose a sanction that reflects the degree of assistance the perjured testimony would have provided to the party. Schultz considered Engel important enough to ask that he testify for her in both the criminal case against her and the defamation suit against the Journal. The fact that Engel might not have been helpful to Schultz does not make an attempt to suborn perjury from him any less a flagrant and knowing disregard of the judicial process. *Cf. Richardson v. Union Oil Co. of Calif.*, 167 F.R.D. 1, 4 (D.D.C. 1996) ("Discovery is not just a game where all that counts is the ultimate score no matter how unethically the players behaved."). Thus, any attempt by Schultz to persuade Engel to lie for her under oath could properly be considered egregious misconduct.

¶ 16. Similarly, whether the Journal was prejudiced is also not a factor that the circuit court was required to consider. The court's ability to maintain judicial integrity was compromised regardless whether the Journal was harmed. *Cf. Johnson*, 162 Wis. 2d at 281–82 (holding that finding of prejudice to the opposing party was not required before dismissing suit as a sanction for disobeying court orders because the plaintiff's misconduct had prejudiced the circuit court's ability "to prevent injustice to the operation of the judicial system as a whole").

¶ 17. Finally, Schultz and ALI challenge the circuit court's power to dismiss their case because its decision was based partially on evidence that Schultz had attempted to suborn perjury from Engel in the context of the criminal case against her. Because the circuit court had no jurisdiction over that case, Schultz

and ALI suggest that it was barred from considering any misconduct that might have occurred in that case. Had the circuit court relied wholly on misconduct that had taken place outside the context of the current suit, we would agree that the circuit court had exceeded its discretion. Circuit courts are not intended to be a "roving commission to inquire into evils and upon discovery correct them." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 551 (1935) (CARDOZO, J., concurring).

¶ 18. This is not, however, what the circuit court did here. First, the circuit court's decision to dismiss was not based solely, or even primarily, on its finding that Schultz had attempted to suborn perjury in the criminal case. Rather, as we will discuss further below, the court also found that Schultz had attempted to suborn perjury on at least two instances in the context of her defamation suit. In assessing the severity of Schultz's misconduct and the need for a corresponding appropriate sanction, the circuit court was within its authority to consider Schultz's previous attempt inasmuch as it showed that Schultz had engaged in a pattern of fraudulent behavior. Second, there was a very close relationship between the perjury allegations in both cases: the parties involved were the same, and there was overlap in the content of the testimony that the court found Schultz attempted to elicit. It is evident, then, that the circuit court was not on a fishing expedition for any type of misconduct it could find. The high degree to which the behavior in both cases was tied together justified the court's decision to also consider both in assessing sanctions. *Cf. Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) (holding that a court may impose sanctions for misconduct that occurred before

other tribunals). In sum, the circuit court's consideration of Schultz's previous attempt at suborning perjury did not constitute an "irrelevant factor," requiring us to conclude that the circuit court erroneously exercised its discretion.

¶ 19. There are options other than dismissal available to circuit courts imposing sanctions on parties engaging in fraudulent behavior. Because dismissal is an "extremely drastic penalty," *Hudson*, 194 Wis. 2d at 542, circuit courts must use their authority with restraint and should consider whether there are less severe sanctions that would adequately deter and punish the misconduct. In this case, Schultz and ALI suggest that instead of dismissing the case, the circuit court could have prohibited her from calling Engel as a witness. This suggestion is unrealistic, however, because it is almost certain that Schultz herself would have decided not to call Engel, as it was Engel who provided testimony that Schultz had asked him to lie. In short, because the finding of misconduct consisted of attempted subornation of perjury, we cannot conclude that the circuit court exercised its discretion erroneously by determining that other sanctions would be inadequate.

2. Authority to Hold Evidentiary Hearing and Make Credibility Determination

¶ 20. Schultz and ALI emphasize that, regardless whether attempted subornation of perjury is misconduct subject to the sanction of dismissal, the circuit court had no authority to hold an evidentiary hearing and make credibility determinations when Schultz denied any wrongdoing. They argue that because they requested and paid for a jury, the circuit court violated

769

their right to a jury trial when it determined that Schultz had attempted to suborn perjury.

¶ 21. Both the U.S. and Wisconsin Supreme Court agree that courts have inherent authority to investigate claims that a party is engaging in fraudulent behavior or improperly influencing witnesses. *See O'Brien v. State*, 261 Wis. 570, 577, 53 N.W.2d 534 (1952) ("It was not only the right of the court, but its *duty,* to investigate allegations of [witness tampering] in the interest of protecting witnesses from intimidation and maintaining such order as would insure honest testimony in the case.") (emphasis added); *see also Chambers*, 501 U.S. at 44 ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."). We therefore conclude that the circuit court was within its authority to hold an evidentiary hearing.[4]

¶ 22. Schultz and ALI suggest, however, that a court loses its authority to sanction whenever there is a

---

[4] We note that federal courts have uniformly held that an evidentiary hearing is the appropriate method for resolving disputed issues of fact in the context of a court's decision whether to impose sanctions. *E.g., Rogal v. American Broadcasting Cos., Inc.*, 74 F.3d 40, 45 (3d Cir. 1996); *Doe v. Maywood Housing Authority*, 71 F.3d 1294, 1299 (7th Cir. 1995); *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993); *Chemiakin v. Yefimov*, 932 F.2d 124, 130 (2d Cir. 1991); *In re Kunstler*, 914 F.2d 505, 520 (4th Cir. 1990); *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 351 n.11 (D. Conn. 1981). Furthermore, a litigant's right to a jury trial is not violated if the court, after determining that the plaintiff has engaged in fraudulent behavior, dismisses the suit as a sanction. *E.g., Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898–99 (5th Cir. 1997); *Pope v. Federal Exp. Corp.*, 974 F.2d 982, 984 (8th Cir. 1992); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983).

disputed issue of fact. We cannot agree. Adopting such a rule could often render courts powerless to both prevent and deter abuses of the litigation process. As we have noted in ¶ 9, Wisconsin case law has long recognized the authority of a circuit court to sanction parties for litigation misconduct. We reject Schultz and ALI's view because we do not believe that article I, section 5, guaranteeing the right to a jury in civil cases at law, was intended to prevent circuit courts from sanctioning litigants whose actions threaten the administration of justice.

¶ 23. Moreover, as *O'Brien* noted, the circuit court had a duty to investigate the allegations of misconduct. Although resolving disputed issues of fact regarding the merits of a case is generally the province of the jury, assessing the need for sanctions is undoubtedly the province of the circuit court. In sum, we conclude that the circuit court had the authority both to hold an evidentiary hearing and to make credibility determinations, and that Schultz's right to a jury trial was not violated.

¶ 24. Schultz and ALI insist that, unless the circuit court's decision is reversed, we will be allowing "trial courts to conduct grand jury investigations during the course of civil litigation in an attempt to 'end run' jury trials." We do not believe, however, that circuit courts are anxious to rob juries of their role as fact finders, as this case demonstrates. The circuit court had already denied the Journal's motion for summary judgment on two of the appellants' claims. It would have been much easier for the circuit court to simply deny the Journal's motion to dismiss, allow the jury to sort everything out, and perhaps refer the Journal's allega-

tions to the district attorney's office. Thus, we are unwilling to assume that circuit courts will use perjury allegations to avoid a jury trial, particularly when a circuit court has other, much less time consuming methods of doing so if it were so inclined. Rather, we agree with the supreme court that "the circuit courts of this state will remain mindful that 'the law prefers whenever reasonably possible, to afford litigants a day in court.' " *Johnson*, 162 at 287 (quoting *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977)).

3. Due Process

¶ 25. We also disagree with Schultz's contention that the circuit court denied her right to due process. Due process requires notice and opportunity to be heard. *Riemer v. Riemer*, 85 Wis. 2d 375, 377, 270 N.W.2d 93 (Ct. App 1978). *Latham v. Casey & King Corp*, 23 Wis. 2d 311, 316, 127 N.W.2d 225 (1964). Although Schultz argues that she had no notice, we believe this assertion to be disingenuous. First, the circuit court held the evidentiary hearing in response to the Journal's motion to dismiss the suit as a sanction for perjury and attempted subornation of perjury. Second, Schultz's attorney acknowledged during the hearing that dismissal would be a possible sanction if Engel's testimony was believed. Therefore, Schultz cannot argue that she had no notice of the possibility of a sanction or the basis on which it would be imposed.

¶ 26. The circuit court also provided Schultz with an opportunity to be heard. Schultz was given a four-day evidentiary hearing, in which she could provide testimony, present exhibits, and cross-examine adverse witnesses. Due process requires no more than this.

¶ 27. Schultz also cites numerous instances during the hearing in which she claims her right to due process was violated. Other than her claim that evidence was improperly excluded, however, she provides no legal authority to support her assertions, and, therefore, we will not address them. *See State v. Beck*, 204 Wis. 2d 464, 472, 555 N.W.2d 145 (Ct. App. 1996). With regard to the excluded evidence, Schultz argues that the circuit court erred "by refusing to let plaintiffs use· the information contained in Mr. Engel's criminal record to impeach Mr. Engel," citing *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989), for the proposition that circuit courts "must permit impeachment of civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony." We note first that *Green* was an interpretation of F. R. Evid. 609(a)(1), not a holding regarding the requirements of due process, so it is not binding on Wisconsin circuit courts. Second, *Green* was superseded in 1990 when Congress amended Rule 609(a)(1), so that the rule now expressly provides that prior convictions of witnesses in civil actions shall be admitted *only* if the court determines that the probative value outweighs its prejudicial effect. *See Daniels v. Loizzo*, 986 F. Supp. 245, 250 n.7 (1997) (recognizing *Green*'s abrogation).

■

¶ 28. In this case, the circuit court allowed Schultz to introduce evidence that Engel had been convicted nine times from 1985 to 1990 of crimes relating to dishonesty, such as burglary and obstructing an officer, and also permitted her to question Engel with regard to an act from 1997 involving fraud, for which Engel was not convicted. However, the circuit court also prohibited Schultz from offering evidence

regarding: (1) a child abuse and an assault conviction from 1994 because they were not crimes of dishonesty; (2) incidents for which Engel was investigated, but never convicted because they had occurred more than ten years ago; and (3) the nature of any of the offenses for which Engel was convicted. Whether to admit prior conviction evidence for impeachment purposes under WIS. STAT. § 906.09[5] is a matter within the discretion of the trial court. *State v. Kruzycki*, 192 Wis. 2d 509, 525, 531 N.W.2d 429 (Ct. App. 1995).

¶ 29. With regard to the child abuse and assault convictions, WIS. STAT. § 906.09(2) states that evidence of a conviction may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." In deciding whether this test has been met, the circuit court may consider whether the crime involved dishonesty or a false statement. *State v. Smith*, 203 Wis. 2d 288, 296, 553 N.W.2d 824 (Ct. App. 1996). Because we agree that child abuse and assault are not crimes of

---

[5] WISCONSIN STAT. § 906.09 provides in part:

**Impeachment by evidence of conviction of crime or adjudication of delinquency.** (1) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or adjudicated delinquent is admissible. The party cross-examining the witness is not concluded by the witness's answer,

(2) EXCLUSION. Evidence of a conviction of a crime or an adjudication of delinquency may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

(3) ADMISSIBILITY OF CONVICTION OR ADJUDICATION. No question inquiring with respect to a conviction of a crime or an adjudication of delinquency, nor introduction of evidence with respect thereto, shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded.

dishonesty, we conclude that the circuit court did not misuse its discretion in excluding these convictions from evidence.

¶ 30. We also conclude that the circuit court did not erroneously exercise its discretion in excluding Engel's prior bad acts. WISCONSIN STAT. § 906.08(2) allows impeachment of a witness using specific instances of conduct only when the conduct is "not remote in time." As the prior bad acts in question all occurred before 1991, the court did not erroneously exercise its discretion by excluding them.

¶ 31. Finally, with regard to the court's limit on the evidence relating to the nature of the convictions, we have held that the scope of inquiry for impeaching witnesses through prior convictions is very narrow. *State v. Sohn*, 193 Wis. 2d 346, 353, 535 N.W.2d 1 (Ct. App. 1995). Counsel may ask if the witness has been convicted of a crime, and if so, how many times. *Id.* If the witness's answers are truthful and accurate, no further inquiry may be made. *Id.* Engel admitted on cross-examination that he had been convicted nine times. Therefore, no further inquiry was permissible and the circuit court correctly prohibited more questions.

4. Circuit Court's Findings

¶ 32. Schultz contends that the record does not support the circuit court's finding that she attempted to suborn perjury from Engel. We review a circuit court's findings of fact under a clearly erroneous standard. *Vince v. Voight*, 2000 WI 93, ¶ 69, 236 Wis. 2d 588, 614

N.W.2d 388; WIS. STAT. § 805.17(2). We must accept the circuit court's assessment of the credibility of a witness unless we can say that a witness was credible or incredible as a matter of law. *Hallin v. Hallin*, 228 Wis. 2d 250, 258–59, 596 N.W.2d 818 (Ct. App. 1999).

¶ 33. First, Schultz argues that the circuit court erred when it failed to require a showing of proof beyond a reasonable doubt. Because attempted subornation of perjury is a crime, Schultz reasons that the criminal burden of proof should have been applied. Schultz is incorrect that the criminal burden should have applied, however, because Schultz was not found guilty of committing a crime by the circuit court. Rather, the court determined that she had engaged in litigation misconduct warranting a sanction. No criminal complaint issued, no loss of liberty was at stake, and no criminal jeopardy attached. Therefore, the fact that attempted subornation of perjury is an act that *could* be prosecuted as a crime does not convert a sanction hearing in a civil case into a criminal trial.

¶ 34. We agree with the circuit court that the correct standard of proof to apply was clear and convincing evidence. Both because the sanction of dismissal is so severe and the allegation of misconduct is so serious, we believe that a heightened standard of proof is appropriate. Federal courts agree that clear and convincing evidence is required before a court may dismiss a case for fraudulent behavior. *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995); *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *Pfizer, Inc. v. Intern'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976).

¶ 35. At the end of the hearing, the circuit court concluded that Schultz had asked Engel to testify falsely on at least three separate occasions: (1) in July

1997, during the pendency of criminal proceedings against Schultz for her alleged involvement in a 1996 dognapping; (2) in Schultz's home during July 1998, after the criminal charges were dropped and Schultz filed a defamation case against the Journal; and (3) on September 3, 1999, just before the Journal deposed Engel.

¶ 36. In coming to this conclusion, the court relied primarily on the testimony of Clary Engel. Engel was an acquaintance of Schultz, who Schultz met in 1995 after Engel's dog was involved in an accident and Schultz offered to pay for the surgery. According to Engel, after Schultz was charged with the dognapping of two Gordon Setters in Whitefish Bay, Wisconsin, Schultz asked him to provide her with a false alibi for the evening that the dogs were stolen. After the criminal charges were dropped, Engel stated that Schultz asked him to provide the same false alibi in the context of her defamation suit against the Journal and offered to share her recovery with him if she was successful. In addition, Engel testified that Schultz asked him to falsely testify that he had listened to Sykes' radio show in which Sykes had accused Schultz of paying someone to kill a dog for political purposes, and that Sykes' statements had lowered Engel's opinion of Schultz. Engel also testified that Schultz admitted to him that she was the one who had taken the Gordon Setter dogs.

¶ 37. Schultz's version of events was quite different from Engel's. She denied asking him to lie for her in either the criminal case or the defamation case. Although she admitted she had known the whereabouts of the Setters, she also denied having stolen or transported them, or that she told Engel that she had taken the dogs. According to Schultz, Engel *was* with her on January 17, 1996, the day the Setters were stolen, and

he also told her that he had listened to Syke's show when Sykes was discussing Schultz. Schultz also testified that Engel had *asked* to be a witness in both the criminal case and the defamation suit, but in August 1999, Engel asked Schultz for $2,000, threatening that he would "put on a big performance" if she did not comply. She testified that she had tried to tape a telephone conversation with Engel so that she could obtain evidence of his demand, but that the recorder malfunctioned, ruining the tape, so she threw the tape out. Schultz admitted that she met with Engel just before his deposition on September 3, 1999, but she claimed that it was not to suborn perjury from him, but rather to persuade him to talk to her attorney. She stated that both times Engel made the money demand, she refused him.

¶ 38. Schultz argues that Engel's testimony is not credible for a number of reasons, including that he: (1) has been convicted of numerous felonies and misdemeanors; (2) first testified that he had only five convictions even though it was later established that he had more than this; (3) lied about the number of times he had met with the Journal's lawyers; (4) does not remember talking to two of Schultz's attorneys, even though both of them testified that they did speak with him; and (5) asked both the Journal Sentinel and Sykes for money in exchange for information and then failed to reveal that he did so in his deposition.

¶ 39. While we agree that all of these are factors that the circuit court could have considered in assessing Engel's credibility, we do not believe that they require us to conclude that Engel's testimony was not credible as a matter of law. With regard to Engel's convictions, the court acknowledged that Engel had been convicted

a number of times, but concluded that because of their remoteness in time, the convictions did not preclude the court from accepting Engel's testimony as true. We do view as troubling Engel's request for compensation from the Journal Sentinel and Sykes, which is now undisputed. Again, however, it does not compel a determination that Schultz must be believed over Engel. Engel explained that the reason he made the request was that he believed journalists provided compensation for news stories, and that he did not reveal it at the deposition because he did not think he had done anything wrong. One reasonable inference that could be taken from Engel's request is that he was trying to sell his testimony to the highest bidder, but it would also be reasonable to infer that his explanation was the truth. When more than one inference is reasonable, it is the function of the trial court sitting as fact finder, not this court, to decide which inference to draw. *Garfoot*, 228 Wis. 2d at 725.

¶ 40. In addition to Engel, the court also relied on the testimony of several other witnesses, including Barbara Manson and June Ellen Jones. Manson and Jones both had the Setters in their custody for a time before the dogs were returned to their owner. Although Manson and Jones did not provide testimony that Schultz had attempted to suborn perjury from Engel, the court concluded that they corroborated Engel and undermined Schultz's testimony because both of their testimonies conflicted with Schultz and because Manson testified consistently with Engel that Schultz told her that the dogs were in her custody. We agree with the circuit court that both Manson and Jones tend to discredit key parts of Schultz's version of events.

¶ 41. The circuit court also relied on several exhibits that had been introduced during the hearing.

Among these was a document created by Schultz during her preparation for the criminal case. At the top of the document is typed "Clary Engel," followed by forty-two typed questions and answers regarding Engel's activities on January 17, 1996, the day the Gordon Setters were stolen (e.g. "Were you at Cindy[ Schultz]'s house on the day and early evening of January 17, 1996?" "Yes"). During his testimony Engel stated that the document was created by Schultz and intended to be used by him as a script for the purpose of giving perjured testimony in the form of a false alibi. Engel claimed Schultz wrote out both the questions *and* the answers on her own and then gave the document to Engel for him to memorize. He also testified that none of the answers were true. Schultz admitted that she did type questions out to go over with Engel, but testified that the answers came from Engel and that she did not insert the answers until after she interviewed him. She further asserted that the answers in the document were what actually happened.

¶ 42. In concluding that Schultz had created the documents for the purpose of suborning perjury, the circuit court noted that Schultz admitted that at least one of the answers was false. Specifically, question one on page five of the document asked, "Did you talk to Cindy [Schultz] about your testimony?" The typed answer states, "NO," even though Schultz admitted that she had gone over Engel's testimony with him. Schultz was unable to explain during her testimony why she had written the false answer. Furthermore, typed on another document that was included with the questions and answers was the message: "Clary [Engel]: Study this stuff. Don't show it to ANYONE not even my

attorney." Schultz did not deny typing this message.[6] The court concluded that this supported an inference that Schultz created the document for fraudulent purposes, and we cannot conclude that this is an unreasonable inference.

¶ 43. In deciding that Schultz was not credible, the circuit court emphasized that while Schultz had the greatest incentive to lie, there was no apparent motive for Engel, Manson, and Jones to falsely contradict Schultz's testimony. The appellants too have failed to provide possible reasons for why these individuals would want to perjure themselves for the sake of hurting Schultz.[7] In her brief Schultz claims that Manson and Jones did *not* contradict her testimony and that "only if Ms. Schultz, Ms. Jones, Mr. Wall, Mr. Huston [one of the Journal's attorneys], Ms. Rowe [one of Schultz's former attorneys], Ms. Majerus, Ms. Volk [a friend of Schultz who was involved in the dognapping], Ms. Kiedrowicz [Schultz's sister], and Mr. Ehlinger [one of Schultz's current attorneys] were all lying could Mr. Engel's version of events be true." Schultz, however, provides no citation to the record to support this assertion, nor does she explain how each of these individuals contradicted Engel's testimony. Rather, Schultz admitted under oath that her testimony con-

___

[6] In attempting to explain the note, Schultz testified that, because she had had negative experiences with lawyers, she did not want any lawyers involved with a witness "until I had somebody completely and totally on my case."

[7] During the hearing, Schultz's attorney questioned Engel about a decision by Schultz to neuter Engel's dog without his permission, and suggested that this would have created hostility toward Schultz. Engel, however, denied that he was upset about it, and Schultz and ALI have not asserted this as a possible explanation on appeal.

flicted with that of Engel, Manson, Jones, and also Detective Staudacher, one of the officers who had investigated the dognapping case.

¶ 44. The court also noted that Schultz never communicated Engel's money demand to anyone until after Engel testified in his deposition that Schultz had attempted to suborn perjury from him, and that she had not told police about having an alibi on the evening of the dognapping when they first questioned her. Finally, the court stated that during the hearing, Schultz had been unwilling to agree to answer questions that had obvious answers, avoided questions by giving unrelated answers, and had a "convenient memory."

¶ 45. After independently reviewing the hearing testimony and exhibits, we conclude that the evidence permitted the circuit court to find that there was clear and convincing evidence that Schultz had attempted to suborn perjury from Engel. Accordingly, we determine that the circuit court properly exercised its discretion in dismissing Schultz's claims. We therefore need not decide whether Schultz is a limited purpose public figure or whether the circuit court was correct in granting summary judgment to the Journal on all but two of Schultz's claims. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

### C. Attorney Fees

¶ 46. Upon dismissal of the case, the Journal filed a motion for costs and attorney fees. After holding two additional hearings on the appropriateness of awarding fees and on the reasonableness of the amount claimed

by the Journal, the circuit court awarded fees and costs in the amount of $168,944.97 as an additional sanction for Schultz's misconduct. We review the circuit court's decision to award attorney fees as a sanction and the amount it chose to award for an erroneous exercise of discretion. *Hur v. Holler*, 206 Wis. 2d 335, 341–42, 557 N.W.2d 429 (Ct. App. 1996); *Schaefer*, 182 Wis. 2d at 163.

¶ 47. Schultz and ALI challenge the award of fees on several grounds. First, they argue that the American Rule prohibits courts from awarding attorney fees to the prevailing party unless it is provided for by contract or statute. *See City of Beloit v. Town of Beloit*, 47 Wis. 2d 377, 392, 177 N.W.2d 361 (1970). Although we agree this is the general rule, it does not apply in the context of awarding fees as a sanction for misconduct. This was recognized by *Schaefer*, which held that courts have the inherent authority to assess attorney fees as a sanction. 182 Wis. 2d at 163. The Supreme Court has also held that the American Rule does not bar courts from exercising their inherent power to assess attorney fees. *Chambers*, 501 U.S. at 45–47. Furthermore, because the circuit court relied on its inherent authority to award fees, the appellants' attempt to rely on the limitations of fee awards under Wis. Stat. § 814.025 is unpersuasive.

¶ 48. Second, Schultz and ALI argue that a sanction of attorney fees could be justified in the case of a fraud on the court, but then cite federal case law to support their assertion that, even accepting the circuit court's factual findings, no fraud on the court took place. We need not decide, however, whether Schultz meets the elements for a fraud on the court. As we noted in ¶ 9, the test in Wisconsin for imposing sanc-

tions is whether the party acted in bad faith or engaged in egregious misconduct. Because we have already concluded that attempted subornation of perjury is egregious, it is unnecessary to consider whether Schultz has also committed a fraud upon the court.[8]

¶ 49. Third, Schultz and ALI contend that the sanction of attorney fees was "purely punitive" and was akin to a criminal penalty. Relying on *United Mine Workers v. Bagwell*, 512 U.S. 821 (1994), and *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126 (2d Cir. 1998), Schultz and ALI therefore assert that a jury trial and proof beyond a reasonable doubt were required. In *Bagwell*, the Supreme Court held that a $52 million dollar fine, imposed by a district court for a party's failure to obey a detailed injunction, was properly classified as a criminal contempt sanction and thus required the procedural protections that would be afforded under criminal law. 512 U.S. at 836–38. The Second Circuit in *Mackler* interpreted *Bagwell* as also requiring criminal procedural protections in certain instances when civil sanctions are imposed for discovery abuses. *Mackler*, 146 F.3d at 129.

¶ 50. We believe that both *Bagwell* and *Mackler* are inapposite. We note first that *Bagwell* was highly fact intensive and did not purport to establish universal requirements for all penalties imposed by a court. The most prominent difference between *Bagwell* and the present situation is that here, the circuit court's penalty was an award of attorney fees for the amount the

---

[8] Schultz again argues that attorney fees can be awarded only when a party has acted in bad faith, which she claims requires a showing that the party's claims were without merit. We have considered and rejected this argument in ¶ 14, and need not address it again here.

784

Journal incurred in prosecuting its motion to dismiss while in *Bagwell* it was a $52 million non-compensatory contempt fine, payable to the Commonwealth of Virginia rather than to the opposing party. 512 U.S. at 834. Of particular concern to the Court in *Bagwell* was the fact that the fine had no relation to the loss incurred by the other party. *Id.* Notably, *Bagwell* did not indicate that it was limiting the holding of *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), which recognized the inherent authority of courts to award attorney fees as a sanction for bad-faith conduct within the context of a civil proceeding.

¶ 51. *Mackler* likewise fails to support the appellants' argument. Although *Mackler* extended *Bagwell*'s holding to include certain sanction proceedings involving discovery abuses, its decision was limited to sanctions that were explicitly punitive and payable to the court rather than the opposing party. *Mackler*, 146 F.3d at 129. A later Second Circuit case made this clear when it upheld a district court's decision to award attorney fees, imposed without criminal procedural protections, as a sanction for making false statements and in spite of the party's objection that the sanction was contrary to *Mackler*. *See Margo v. Weiss*, 213 F.3d 55, 62–63 (2d Cir. 2000). Although the circuit court in this case stated that it was awarding fees in part to "penalize the offender," the sanction was not purely punitive because the fees awarded did not exceed the amount that the court determined had been incurred by the Journal and the award was paid to the Journal, not to the State. In sum, there is nothing in either *Bagwell* or *Mackler* requiring the circuit court to grant a jury trial or apply a reasonable doubt burden of proof before it awarded attorney fees as a sanction.

¶ 52. Fourth, Schultz and ALI argue that the circuit court erred when it failed to consider the relative wealth of the parties in determining the amount of sanctions. Under *Jandrt ex rel. Brueggeman v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 597 N.W.2d 744 (1999), circuit courts are required to "reflect upon equitable considerations in determining the amount of the sanction," including the assets of the sanctioned party. *Id.* at 577–78 (quoting *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d 1429, 1438–39 (7th Cir. 1987)); *see also White v. General Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir 1990) (because primary purpose of monetary sanction is to deter misconduct rather than compensate opposing party, ability to pay must be considered in determining amount of sanction). It was Schultz's burden, however, to come forward with evidence regarding her financial status. *See White*, 908 F.2d at 683. Schultz contends that she met this burden, but we disagree. The only documents Schultz offered that reflected her financial situation were two reports prepared by experts analyzing the losses incurred by Schultz as a result of the Journal's alleged defamation. The circuit court rejected these documents as hearsay because the expert was not there to testify and Schultz was not familiar with the documents.[9] The circuit court did not misuse its discretion in refusing to consider the reports. An expert report is hearsay and cannot be accepted into evidence unless it falls into one of the hearsay exceptions. *See R.S. v. Milwaukee County*, 162 Wis. 2d 197, 204–05, 470 N.W.2d 260 (1991). The

---

[9] In response to a question regarding what the exhibits contained, Schultz responded, "To be honest, I have not even read this. I just got this from Ralph[ Ehlinger, Schultz's attorney]. I have not even seen these things."

appellants have not suggested that the report is an exception to the hearsay rule, and we are unable to locate one that applies.[10]

■

¶ 53. We recognize the severity of the circuit court's sanctions. Although as an original matter we may not have imposed a dual sanction of dismissal and attorney fees, that is not the test. The question is whether the circuit court erroneously exercised its discretion in imposing the sanction it did. *See Kinship*, 231 Wis. 2d at 573. We previously recognized in *Hur* a circuit court's authority to impose both dismissal and attorney fees as a sanction for litigant misconduct. 206 Wis. 2d at 337. Although *Hur* was decided under statutory authority, we see no meaningful distinction when the court uses its inherent authority. Accordingly, because we conclude that the circuit court did not erroneously exercise its discretion, we affirm its decision to dismiss Schultz's case and award attorney fees as a sanction for her attempted subornation of perjury. However, because the circuit court also awarded attorney fees through appeal, we remand for a determination of those fees.

---

[10] Apart from their argument that the relative wealth of the parties must be considered, neither appellant challenges the reasonableness of the fee award in their main briefs so we need not consider this issue. Although Schultz states in her reply brief that she is challenging the award's reasonableness, she fails to explain why she believed the circuit court's determination was in error. Therefore, this argument was waived. *In re Estate of Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (1981) (appellant may not raise issue for the first time in reply brief); *Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (an issue raised but not briefed or argued is deemed abandoned).

## D. The Animal Lobby, Inc.

¶ 54. In imposing sanctions, the circuit court dismissed the claims of both Schultz and ALI, and made them jointly and severally liable for the award of costs and fees. However, the court never mentioned ALI in its oral decisions, but referred only to Schultz. ALI now argues that the circuit court erred in imposing sanctions on ALI for the misconduct of Schultz. The Journal argues that because Schultz is the president of ALI, her misconduct should also be considered the misconduct of ALI, so that it was unnecessary for the court to expressly consider ALI apart from Schultz.

¶ 55. We do not believe that Schultz and ALI should be treated as one solely because Schultz is ALI's president, and the parties have not cited to portions of the record that would more fully explain the extent to which ALI's identity overlaps with Schultz's. Because the circuit court did not explain its reasoning for dismissing ALI's claims and holding it liable for attorney fees along with Schultz, and we have not uncovered an independent basis for its decision in the record, we conclude that it exercised its discretion erroneously by failing to address ALI separately. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).

¶ 56. The Journal also argues, however, that whatever claims ALI might have had were lost because it failed to first demand a retraction of the allegedly libelous statements as required by WIS. STAT. § 895.05(2)[11] before filing its lawsuit. ALI responds that the statute

---

[11] WISCONSIN STAT. § 895.05(2) provides:

Before any civil action shall be commenced on account of any libelous publication in any newspaper, magazine or periodical, the libeled person shall first give those alleged to be responsible or

did not require it to request a retraction for the statements made by Sykes on his radio show and that all three respondents are barred from using ALI's failure to request a retraction as a defense because they failed to raise this issue in the circuit court.

■

¶ 57. We agree with ALI that it was not required to request a retraction from Sykes because his statements were not made in print. *See It's in the Cards, Inc. v. Fuschetto*, 193 Wis. 2d 429, 436, 535 N.W.2d 11 (Ct. App. 1995) (holding that notice requirement of WIS. STAT. § 895.05(2) applies only to libel made in print). We do not agree, however, that we are precluded from considering ALI's failure to make the request with respect to the Journal Sentinel because the Journal Sentinel failed to raise the issue in the circuit court. Failure to request a retraction under WIS. STAT. § 895.05(2) is not an affirmative defense. Rather, the notice requirement of

---

liable for the publication a reasonable opportunity to correct the libelous matter. Such opportunity shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. The notice may also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty. The first issue published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, or so much thereof as shall not be libelous of another, scurrilous, or otherwise improper for publication, published as the libeled person's statement, shall constitute a correction within the meaning of this section. A correction, timely published, without comment, in a position and type as prominent as the alleged libel, shall constitute a defense against the recovery of any damages except actual damages, as well as being competent and material in mitigation of actual damages to the extent the correction published does so mitigate them.

the statute is a condition precedent to the existence of a cause of action for libel where the statute applies, and a circuit court is not competent to hear the claim until the condition is met. *Cf. Elm Park Iowa, Inc. v. Denniston*, 92 Wis. 2d 723, 728–29, 286 N.W.2d 5 (Ct. App. 1979) ("[N]o civil action for damages can be brought or maintained unless the condition precedent of required notice is given."); *see also Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis. 2d 372, 380–81, 302 N.W.2d 68 (Ct. App. 1981) (holding that failure to request retraction under § 895.05(2) requires that claim be dismissed). The Journal denied in its answer that ALI had demanded a retraction, and that was all it was required to do. Therefore, because ALI never demanded a retraction from the Journal Sentinel, its claim against the Journal Sentinel must be dismissed.

¶ 58. On remand, the circuit court must consider whether Schultz's misconduct can be imputed to ALI. If the court concludes that the two appellants should be treated separately, then it must permit ALI's surviving claims against Sykes and the Journal Broadcast Group to proceed to trial and ALI may not be held liable for the Journal's fees and costs. If the court concludes that Schultz's conduct can be properly imputed to ALI, then ALI's claims may be dismissed and the court may hold ALI and Schultz jointly and severally liable for the Journal's fees and costs.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.