Jacquie HUR, Plaintiff-Appellant,

v.

LaVerne HOLLER, Lana Holler a/k/a Lana Koechel Holler, Thomas Knickmeier, First Federal Savings and Loan Association of Madison and Farm Credit Services of Madison, ACA, Defendants-Respondents.

Court of Appeals

*Nos. 95–2966, 95–3592. Submitted on briefs October 17, 1996.—Decided November 7, 1996.*

(Also reported in 557 N.W.2d 429.)

335

For the plaintiff-appellant the cause was submitted on the briefs of *Earl H. Munson and Linda M. Zech* of *La Follette & Sinykin* of Madison.

For the defendants-respondents LaVerne Holler and Lana Holler a/k/a Lana Koechel Holler the cause was submitted on the brief of *H. Dale Peterson and Christian A. Jenkins* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

Before Roggensack, Deininger and Nettesheim, JJ.

ROGGENSACK, J. Jacquie Hur appeals a decision and order awarding the respondents $16,146.87 in costs and attorney fees after Hur's case was dismissed for discovery abuses. She contends that the trial court erroneously exercised its discretion under § 804.12(2) and 804.12(4), STATS., by including in the sanction attorney fees and costs generated as a result of conduct which had been previously sanctioned by the court, as well as various expenses she claims were not actually caused by the discovery violations. Because we conclude the trial court did not exceed its statutory authority by imposing both compensatory and non-compensatory sanctions, and because the court's findings of causation are not clearly erroneous, we affirm.

## BACKGROUND

Jacquie Hur initiated this proceeding by filing a foreclosure action on November 25, 1992. The complaint alleged that Lana and LaVerne Holler were in default on several notes and mortgages held by Hur. The Hollers filed a motion to dismiss on December 28, 1992, and served Hur with a set of interrogatories and requests to produce documents on December 30, 1992. On January 14, 1993, the trial court amended the briefing schedule on the Hollers' motion to dismiss, allowing them to delay filing an answer until after Hur had responded to their discovery requests.[1]

On April 2, 1993, after the discovery deadline had come and gone, and Hur had failed to respond to informal attempts to move the discovery process forward, the Hollers filed their first motion to compel discovery and impose sanctions. Hur filed her first responses to the Hollers' discovery requests on April 12, 1993, a day before the hearing on the motion to compel discovery. At the hearing, the court found Hur's responses inade-

---

[1] Included in the December 30, 1992 discovery requests were questions about who had drafted the mortgages and notes and who had altered and rerecorded them; requests for the original mortgages and notes in the form in which they were recorded and rerecorded, as well as requests for copies of the Hurs' tax returns from 1975 on; copies of any checks, receipts or documents of any nature evidencing any payment, loan or transfer of money or other consideration from either of the Hurs to the Hollers; copies of any deeds, conveyances, or documents of title relating to the conveyance to the Hollers or others of interest in the parcels of land being foreclosed; copies of any documents relating to Ken Hur's investment, payment or conferring benefit in any form and at any time to the Hollers; and copies of any agreements, contracts, or other writings between the parties.

quate, and gave her two weeks to amend them. The court noted:

> I'm going to hold all of my rulings on sanctions until the end of the case and deal with all of the costs and issues of any dollar sanctions at that time, since I suspect given the posture of this case that the issue may arise again.

On May 21, 1993, after Hur had missed the deadline for filing amended responses, the Hollers again moved to compel discovery and impose sanctions. On May 27, 1993, Hur responded by filing responses. On June 2, 1993, the court found Hur's amended responses were inadequate. This time, the court gave Hur 30 days to submit an affidavit clarifying her position and explaining why the court should not impose sanctions against her.

On July 6, 1993, Hur mailed the requested affidavit, four days after the date established by the court. On August 4, 1993, the court heard arguments on the Hollers' motion to strike Hur's affidavit as untimely. It then asked the parties to conclude the briefing on the Hollers' pending motion to dismiss. On October 12, 1993, the court denied both motions, stating:

> Although the behavior of Hur in this matter could be considered egregious conduct resulting in a dismissal of Hur's claim, in exercising my discretion, I choose to impose terms and conditions upon Hur, which, if met, will allow Hur to pursue this matter further.

Accordingly, the trial court ordered Hur to pay the Hollers $900, as a condition of maintaining the action. The sanction consisted of three distinct $300 fines: one for Hur's failure to timely respond to the initial inter-

339

rogatories, a second for Hur's failure to provide meaningful responses to the initial interrogatories, and a third for Hur's failure to timely file amended responses. The court took no evidence relating to the Hollers' expenses, and gave no indication that the sanction was intended to compensate the Hollers for costs and fees caused by Hur's discovery abuses.

The Hollers filed their answer on November 17, 1993; they amended it on December 13, 1993, alleging as an affirmative defense material and fraudulent alterations of the mortgages. On December 1, 1993, the court gave the Hollers a month to serve Hur with any interrogatories which had been served previously but not fully answered, and directed Hur to respond by January 31, 1994. The Hollers served Hur with their renewed discovery requests on December 28, 1993. Hur responded to the interrogatories, but failed to produce her tax returns or any documents relating to loans made by the Hurs to the Hollers, or to the transfer of any interests in the property being foreclosed.

On December 21, 1993, the Hollers deposed Hur and Attorney Sam Brugger, and requested Hur to bring all those documents relating to transactions between the Hurs and Hollers which had been requested on December 30, 1992, but still had not been produced. Hur failed to bring any documents other than the original notes and mortgages. Hur stated at the deposition that she had not looked for any of the other documents, although she was aware of a two-inch thick file on the Holler transactions in her Florida home.

On March 11, 1994, after having gained access to Hur's "Holler file" on February 9, 1994, the Hollers filed an action for fraudulent alteration of the mortgages against Hur and her husband, Ken. On March

25, 1994, the Hollers moved to dismiss the foreclosure action, as a sanction for Hur's discovery abuses. On April 22, the Hollers deposed Ken Hur, in regard to both actions.

On July 25, 1994, the court dismissed Hur's foreclosure action as a discovery sanction under § 804.12(2)(a)(3), STATS., citing her pattern of dilatory conduct and her blatant disregard of the court's orders. The court asked the Hollers to prepare appropriate documents with regard to their expenses. Hur retained new counsel and filed a motion to reconsider, which was denied on March 6, 1995.

On August 16, 1995, the court held a hearing on the expenses the Hollers alleged were caused by Hur's discovery abuses. On September 7, 1995, the court awarded the Hollers $16,146.87 in costs and attorney fees, pursuant to § 804.12(2)(b) and 804.12(4), STATS. Hur objects on appeal to $11,898.55 of this amount: $8,962.55 of which she claims was caused by the same discovery violations which triggered the earlier $900 sanction. Hur also objects to $1,179.60 for the depositions of Hur and Brugger, $1,054.40 for the Florida deposition of Ken Hur, and $702 for the Hollers' unsuccessful attempt to discharge the mortgages, contending they were not caused by the discovery abuses.

## DISCUSSION

**Scope of Review.**

Statutory interpretation is a question of law. *Michael A.P. v. Solsrud,* 178 Wis. 2d 137, 147, 502 N.W.2d 918, 922 (Ct. App. 1993). We will therefore review the type of sanctions available under § 804.12, STATS., *de novo.* However, determinations regarding

what amount of attorney fees were reasonably incurred as a result of discovery abuses are within the discretion of the trial court, and will be upheld so long as the court demonstrated "a logical rationale based on the appropriate legal principles and facts of record." *Id.* at 153, 502 N.W.2d at 925. We will affirm the circuit court's factual findings unless they are clearly erroneous. Section 805.17(2), STATS.; *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

## Section 804.12, STATS., Remedies.

A trial court has statutory authority to impose sanctions for discovery violations. Section 804.12(2), STATS., provides in relevant part:

(a) If a party . . . fails . . . to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . .

(b) In lieu of any of the foregoing orders, or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney fees, caused by the failure . . . .

And § 804.12(4) provides:

If a party . . . fails . . . to serve answers or objections to interrogatories submitted under s. 804.09, after proper service of the request . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized under sub. (2)(a)1., 2. and 3. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising the party or

> both to pay the reasonable expenses, including attorney fees, caused by the failure . . . .

The statutes permit expenses caused by a party's failure to provide discovery to be awarded, "in addition to" other orders which are just. Moreover, nothing in the language of the statutes deprives a circuit court of its inherent equitable powers. *Syring v. Tucker*, 174 Wis. 2d 787, 806, 498 N.W.2d 370, 375 (1993). Because nothing in 804.12 implies a limit on the court's equitable jurisdiction, the list of sanctions in 804.12 is illustrative, not exhaustive. *Id.* at 796, 498 N.W.2d at 371.

Hur contends the trial court exceeded its discretionary authority under § 804.12(2) and 804.12(4), STATS., by awarding the Hollers $8,962.55 for expenses which were incurred before the court imposed the $900 monetary sanction under § 804.12(2). Hur concedes that, under the statute, a court may impose two different types of sanctions for the same violation, but she maintains that it cannot impose two monetary sanctions for the same violation, unless there has been a finding of contempt. We disagree.

The sanctions listed in § 804.12, STATS., are illustrative, not exhaustive and the circuit courts have broad power to fashion equitable remedies appropriate to the individual circumstances of each case. *Syring*, 174 Wis. 2d at 806, 498 N.W.2d at 376. Section 804.12 sanctions may be non-compensatory, *e.g.,* fines, dismissals, restrictions on the presentation of evidence at trial; and compensatory, *e.g.,* actual costs and expenses incurred by the non-offending party. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 274, 470 N.W.2d 859, 863 (1991). Here, the circuit court ordered both types of sanctions: a $900 non-compensatory sanction on October 12, 1993 and a $16,146.87 compensatory sanc-

tion on September 7, 1995. Because the use of one remedy available under § 804.12 does not preclude the use of any other § 804.12 remedy, we conclude that the trial court correctly interpreted its authority under the statute when it ordered both non-compensatory and compensatory monetary sanctions.[2]

There is an unusual aspect to this non-compensatory sanction: it was awarded to the opposing party, rather than as a payment to the court. However, we find that a harmless error, if error it be, because the Hollers voluntarily deducted $900 from their list of claimed expenses,[3] for the $900 payment they received. Therefore, they were not compensated twice for the same expenses.

When the $900 sanction was ordered, $8,962.55 of expenses had been generated. Hur does not dispute that the expenses incurred prior to October 12, 1993 were caused by discovery violations. Because "[t]he statute places the responsibility, indeed the duty, upon trial courts to prevent [discovery abuses] by imposing certain and sometimes severe sanctions upon persons who engage in [them]", *Solsrud*, 178 Wis. 2d at 156, 502 N.W.2d at 926, we conclude that all $8,962.55 of those costs were appropriately awarded.

---

[2] We were not persuaded on this issue, however, by counsel's letter of May 21, 1996, which was copied to the court and implied that appellant's failure to distinguish the *Syring* case was a fraud upon the court. Comments, in briefs or in letters sent to the court, which are directed toward opposing counsel rather than the issues, are not persuasive argument and are never welcomed by this court.

[3] The Hollers explained to the court that they had applied the $900 to assorted expenses, which absent the $900 payment they would have claimed. The record on appeal supports their assertion.

Hur next argues that an award of attorney fees and costs under § 804.12(2), STATS., is available only with respect to those expenses "caused by the failure" to comply with discovery orders. Hur challenges several different categories of expenses which she claims were not "caused by" discovery abuses. These include the depositions of Jacquie Hur, Sam Brugger, and Ken Hur, and preparation time for a motion to discharge the Hollers' mortgage. We agree that the plain meaning of the statute requires a finding of causation as a condition precedent to a compensatory monetary award.

Causation is a factual finding. *Johnson v. Misericordia Community Hosp.*, 97 Wis. 2d 521, 560, 294 N.W.2d 501, 521 (Ct. App. 1980), *aff'd*, 99 Wis. 2d 708, 301 N.W.2d 156 (1981). The circuit court, having observed the entire course of the proceedings, is in the best position to determine causation. Therefore, we will uphold the circuit court's determination of causation unless it is clearly erroneous. *Noll*, 115 Wis. 2d at 643, 340 N.W.2d at 577.

With respect to the depositions, the court found the Hollers would not have needed the depositions if they had received the information they sought through prior interrogatories and requests to produce. The transcript of Jacquie Hur's deposition shows a considerable amount of time spent discussing previous requests and discovery abuses. Likewise, Ken Hur's deposition covered the same facts for which the Hollers had been requesting information for over a year. Brugger, as Ken Hur's former law partner, was an obvious source for information which Hur had not provided. The circuit court's factual finding that if the Hollers

had received timely, complete, and accurate responses to their interrogatories and requests for production, the depositions would not have been necessary is not clearly erroneous. Therefore, we affirm it.

The circuit court upheld Hur's objection to the costs associated with the Hollers' unsuccessful attempt to discharge the mortgages. It determined that the Hollers' attorney spent 5.3 hours working on the mortgage issue,[4] and reduced the claim by $636. Hur now asks this court to reduce the award by another $720, bringing it down to 50% of the original request for the combined services. However, we cannot say that the trial court's determination of what was a reasonable amount of time to spend on that motion was an abuse of discretion. Therefore, it is affirmed.

## CONCLUSION

Section 804.12, STATS., permits the circuit court to impose both non-compensatory and compensatory monetary sanctions for the same conduct. Because the circuit court's findings of causation are not clearly erroneous; and because it properly exercised its discretion under § 804.12 when it imposed a compensatory sanction consistent with the amount of attorney fees and expenses reasonably incurred due to the appellant's discovery abuses, we affirm.

*By the Court.*—Judgment affirmed.

---

[4] Respondents' itemization of fees and expenses bunched together time spent on multiple issues, some of which were not germane to the discovery problems.