COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    2018AP1801

STATE OF WISCONSIN

Cir. Ct. No.  2012CV452

IN COURT OF APPEALS
DISTRICT III

PAULA LADDUSIRE,

   PLAINTIFF-APPELLANT,

 V.

WEST BEND MUTUAL INSURANCE COMPANY,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Oneida County: PATRICK F. O'MELIA, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Paula Laddusire appeals the dismissal of a lawsuit brought against her homeowner's insurer, West Bend Mutual Insurance Company

(West Bend), seeking recovery of the value of various personal property items she claimed were stolen or damaged. Laddusire also challenges an award of attorney fees to West Bend. We affirm.

## BACKGROUND

¶2     Laddusire reported to West Bend a loss of "hundreds of thousands of dollars," arising from items allegedly stolen or vandalized in the spring of 2007 from her property in Rhinelander, as well as from other items of personal property allegedly stolen in the fall of 2007 by movers hired to transport her belongings to California. After West Bend refused to pay her claimed loss amounts, Laddusire commenced a lawsuit in November 2012 asserting three breach of contract claims and a claim for bad faith by her insurer. West Bend answered and denied it was obligated contractually to make payments, and it also denied that the claimed losses constituted thefts.

¶3     Laddusire's case lay dormant for the first nine months. In August 2013, the circuit court sua sponte ordered the case dismissed absent Laddusire's showing that there was good cause for the order not to take effect. Laddusire's attorney, Michael Stingl, filed a letter on September 3, 2013, asking the court to set a scheduling conference and stating the parties "have been exchanging discovery and for that reason have not had a lot of Court involvement." Following Attorney Stingl's letter, the court held a scheduling conference and entered a scheduling order. Among other things, the court set a deadline for Laddusire to name expert witnesses, but this deadline passed without Laddusire disclosing her experts. Three years after West Bend named its expert witnesses, Laddusire, for the first time, filed a "Denomination of Expert Witnesses," naming herself.

2

¶4  A trial was scheduled for August 2014, but Laddusire failed to attend her scheduled deposition more than once, resulting in the parties requesting an adjournment and a new scheduling conference. Laddusire's deposition had initially been noticed for March 6, 2014, in Rhinelander. One week prior to the date of the deposition, Attorney Stingl sent West Bend an email stating Laddusire "is not able to travel for the purpose of attending her deposition." The deposition was postponed. The deposition was again noticed for May 12, 2014, but six days prior to the deposition, Stingl emailed West Bend and informed it that Laddusire "will not be able to travel to Wisconsin for her deposition."

¶5  In October 2014, West Bend served a third deposition notice, commanding Laddusire to bring "[a]ny and all documents supporting your claim for damages in the instant action." Although Laddusire attended the deposition, she failed to bring three banker boxes of documents responsive to the deposition notice and prior discovery requests. Laddusire claimed she moved the boxes to her parent's home in Rhinelander but that she never attempted to retrieve them in her return trips to Wisconsin. However, she also testified that she obtained police reports from the boxes to prepare for her deposition. After further questioning, Laddusire could not be sure if there were "other receipts or other proofs of loss" supporting her claims unless she was given "time to go through this and probably just compare with the file that I have at home in the boxes … just make sure that there is nothing missing." She also believed there was a Nikon digital camera at her house in Rhinelander that might contain undisclosed photographs of loss items.

¶6  On February 16, 2015, Attorney Stingl sent West Bend's attorney an email stating that Laddusire found some of the documents at the house and that she had them in her possession; she could not find the camera, however. Stingl

purportedly advised Laddusire to send any retrieved documents and photos to him and he would forward them to West Bend's attorney. West Bend again demanded production of this material, and it also sent an April 2015 discovery request asking Laddusire to identify the stolen items and produce "any proof of purchase, sale documents, cancelled check, receipt, or other written documentation of [the] purchase and purchase price" for each.

¶7 West Bend noticed a continued deposition of Laddusire for July 31, 2015. The deposition was cancelled because of Laddusire's failure to respond to West Bend's outstanding discovery. West Bend advised that it would be moving to compel discovery responses, "as we feel the items requested, particularly the credit card information, is vital to the defense of this case." West Bend then filed a motion to compel discovery.

¶8 A new trial date was established for September 2015. As the second trial date approached, more discovery issues resulted in West Bend filing a second motion to compel discovery and a motion to again continue the trial date. In its motion, West Bend recited the various discovery obstacles encountered to date and stated that discovery with Laddusire "has always been a bit like nailing Jell-O to the wall." West Bend reiterated why the discovery sought from Laddusire was becoming increasingly important, particularly regarding credit cards used to purchase the personal property that was the basis for Laddusire's claimed losses, and signed releases for records from the credit cards companies, to which Laddusire objected on the grounds of relevancy.

¶9 West Bend also advised the circuit court, "This is not the only insurance claim that Ms. Laddusire has made that arises out of the alleged theft of her personal property in 2007." Laddusire had contended that she had previously

replaced items stolen from her in California with new items after one insurance claim, and then those same items were allegedly stolen from her a second time in Wisconsin, resulting in her insurance claim with West Bend. West Bend stated to the court that it had "a legitimate interest in making sure that Ms. Laddusire is not getting a 'twofer' on any of the items (i.e. getting paid twice by two different insurance companies, on two different claims, for the single loss of any item of personal property)."

¶10 The circuit court removed the trial date from the calendar and indicated the date would be used for another scheduling conference. The court also granted the motion to compel, entering an August 27, 2015 order requiring Laddusire to provide answers to discovery requests about her credit card accounts, and it signed authorizations for each account. Laddusire never complied with this order. Days before the scheduling conference, Laddusire filed for bankruptcy, resulting in a stay of the lawsuit until 2017. After Laddusire's bankruptcy concluded, the circuit court entered a third scheduling order, setting the trial for June 2018.

¶11 West Bend also served Laddusire with a supplemental notice of deposition for September 14, 2017. Three days prior to the deposition, Laddusire's attorney informed West Bend that she would not be appearing as she was unable to travel. On September 14, 2017, Laddusire was served with an amended supplemental notice of deposition for November 9, 2017. One day prior to the deposition, West Bend was again advised that Laddusire would not be appearing due to her inability to travel.

¶12 On December 6, 2017, West Bend filed a motion to dismiss for Laddusire's failure to prosecute, failure to comply with statutes governing

procedure in civil actions, and failure to obey court orders. In January 2018, Laddusire filed an objection to dismissal, asserting West Bend's dismissal motion was an untimely "dispositive motion" under the scheduling order. In a supporting affidavit, Attorney Stingl conceded his client had not complied with the August 27, 2015 order compelling discovery. He also contended Laddusire's "physical condition has resulted in additional time needed for discovery responses, as well as the need for changing dates for depositions."

¶13     The circuit court rejected the argument that West Bend's motion was untimely, and it heard arguments on the merits on January 17, 2018. During the hearing, Attorney Stingl admitted he was still working on producing discovery required by the August 27, 2015 order. West Bend noted that one of the reasons Laddusire's 2014 deposition had not been completed was that Laddusire had confirmed at the deposition that there were three banker boxes of documents related to the case. West Bend also noted that it "offered to adjourn the deposition on that day and said go to the place, go get those boxes for us. She wouldn't do so." It further advised the court, "None of them have been produced."

¶14     Attorney Stingl responded that the three banker boxes of documents had been destroyed by "a flood or something in the home … [s]o she has no more bankers boxes that she can access … I believe the home has been leveled." Stingl represented to the court that "my client doesn't have any more documents, I'm limited to what I can produce now. … And if further documents are discovered, of course I'm under a duty to disclose them. None have been discovered." Stingl also proposed an audiovisual deposition as a resolution to issues caused by Laddusire living in California and being allegedly unable to travel.

6

¶15     The circuit court agreed there was a basis to dismiss the complaint but declined to grant the motion at that time given the period the matter was "on the back burner" due to the bankruptcy proceeding. The court believed, however, that the case had "dragged on because of Ms. Laddusire." Regarding the three banker boxes, the court required an affidavit from Laddusire within forty-five days "saying there is no other documentation in my possession or that I have access to pertaining to this case." The court also provided Laddusire with additional time to comply with the August 27, 2015 order. The court further stated that an audiovisual deposition was not workable given the amount of paperwork in the case, and it ordered Laddusire to be deposed in Wisconsin within sixty days or to pay "up front" the costs of having the deposition done in California. The court thus took the motion to dismiss under advisement but stated that it may be revisited.

¶16     On March 2, 2018, West Bend received a fax copy of a March 1, 2018 "Affidavit of Paula Laddusire" in which Laddusire averred that she had "provided all documentation to defense counsel which supports [her] claims" and that she had "no further documentation in [her] possession which supports [her] claims." On March 28, 2018, West Bend sent a letter to the circuit court advising that Laddusire had failed to appear for a March 22, 2018 deposition in Wisconsin; failed to comply with the sixty-day deadline for a Wisconsin deposition; and failed to comply with the alternative of attending a California deposition with costs associated with West Bend's travel being paid in advance. West Bend had been advised one day prior to the noticed deposition that Laddusire was unable to travel. West Bend submitted a proposed order and asked the court to grant its pending motion to dismiss. Laddusire filed an objection that same day.

7

¶17 Following a telephone hearing, the circuit court issued an order requiring Laddusire to make herself available for a California deposition. West Bend was required to provide the court with an "estimate of the costs of attending the deposition in California, to include the costs of air travel, hotel, attorney's fees and reasonable expenses." Within ten days of the estimate, Laddusire was required to deposit a check in the estimated amount with the clerk of courts to reimburse West Bend's expenses once incurred.

¶18 Laddusire's California deposition was noticed for May 24, 2018. West Bend's estimate of costs for the deposition totaled $4,889.60—of which $3500 was estimated for attorney fees. Laddusire then requested information regarding the hourly rate for attorney fees and the number of hours "so I can determine whether I need to make an objection." West Bend advised that it had prepared its estimate in good faith, and that the hourly rate was not an appropriate inquiry. However, West Bend indicated, "I will disclose that my estimate is premised on the fact that I will be required to spend two full days of travel and one day in California for the deposition. I did subtract an estimated 3 hours for the deposition."

¶19 Following these exchanges, the circuit court wrote that its order "was as straight forward as [it] thought it needed to be" and the estimate itself was not subject to challenge at that time, but any issue with the amount "can be taken up prior to disbursement." The court added that West Bend's estimates appeared "conservative."

¶20 Laddusire's California deposition was taken on May 24, 2018. On June 29, West Bend advised the circuit court of that fact and requested the disbursement of the money being held by the clerk of courts. West Bend attached

receipts and other papers, noting the actual costs were more than the estimate, but that it was willing to waive the difference. Attorney Stingl notified the court that Laddusire had no objection to the expenses, but she objected to the $3500 in attorney fees until West Bend itemized the hourly rate and hours expended beyond what would have been expended for a Wisconsin deposition. West Bend responded by reiterating that its estimate was "conservative," noting also that Laddusire's failure to appear for the Wisconsin depositions

> required us to incur numerous fees over and above what would have been needed had she done so, including the filing of repeated motions, the preparation and filing of travel estimates, letters to the Court responding to plaintiff's objections to the travel estimates, attendance at hearings, two nine-hour travel days, two hours of travel within California on the day of the deposition, etc.

After reviewing the parties' submissions, the court approved the release to West Bend of the $4,889.60.

¶21     The California deposition also triggered further discovery issues, primarily regarding the three banker boxes of documents Laddusire had promised but failed to produce. Laddusire revealed the three banker boxes referenced in her 2014 deposition were not destroyed but rather were still at her father's residence in Rhinelander, but they had been condensed to one box. In response to West Bend's questions concerning Laddusire's 2014 deposition testimony that she was going to provide those banker boxes to West Bend's attorney, Laddusire testified that "right after the [2014] deposition" she "dug through those three boxes" and "[a]nything that [West Bend's attorney] didn't already have was turned over to him." When informed that the boxes had not been produced, Laddusire stated, "Those three boxes contain private attorney/client privileged information. So that will not be turned over to you. So you can stop right there."

9

West Bend's attorney asked Laddusire, "Are you saying that all three of those [boxes] consist of nothing but attorney/client documentation?" Laddusire replied, "A lot of it does. The stuff that does not has already been turned over to my attorney."

¶22 Another discovery dispute at the California deposition involved the camera located in Rhinelander, containing undisclosed photographs of loss items that Laddusire promised during her 2014 deposition to find and produce. When the subject came up at the California deposition, Attorney Stingl interjected that the camera had already been produced to West Bend's attorney—an assertion at odds with Stingl's February 2015 email to West Bend's attorney stating that the camera had not been found. When asked to verify her March 1, 2018 affidavit averments that she "provided all documentation to defense counsel which supports [her] claims" and had "no further documentation in [her] possession," Laddusire testified, "No, I am not going to say that, because we already covered today, which I didn't think about, that I sent a lot of things out to my California home that we just uncovered today that I didn't think of." Laddusire revealed that she may have a variety of undisclosed documents supporting her claims, including checkbooks, bank ledgers, bank records, and photos.

¶23 West Bend subsequently filed a renewed motion to dismiss. West Bend noted that the California deposition brought the accuracy of Laddusire's prior affidavit into question. West Bend represented to the court that "the boxes of documents and camera have not been produced." West Bend also noted that in addition to the boxes of documents Laddusire failed to produce, she "testified at her [California] deposition that she may have other documents she has not produced which may support her claims, including check registers, bank records, photographs, and documents related to her alleged claim …."

10

¶24 Laddusire did not file a written opposition to West Bend's renewed motion to dismiss. When the circuit court asked at the motion hearing about the banker boxes, Attorney Stingl admitted not knowing what was still at Laddusire's father's residence, stating all he could say was "she says all relevant information has been produced from those three banker boxes which were reduced to one." When pressed by the court regarding Laddusire's unwillingness to state that she had produced everything, Stingl could only say he did not have the records, he had not seen the records, and "[t]hey don't exist to me."

¶25 However, Attorney Stingl also stated the following at the hearing on the renewed motion to dismiss:

> But those documents—I mean, the original three boxes were in my office. Anything that was relevant to the case I took, produced it. The three boxes apparently went back to her dad's house at some point. She went through those again and it's been determined that—again, the things that we produced were the things that were relevant to the case. So everything that was in those three boxes at dad's house is part of this record that's relevant.

¶26 Still, Attorney Stingl later stated at the hearing, "I mean, I had one box …." West Bend responded, "Your Honor, this is the first time that we're hearing that Attorney Stingl has even had these boxes." West Bend also noted that at Laddusire's 2014 deposition, "she said that she had three boxes at her home that were not yet produced to counsel." West Bend further stated "those are the boxes we're referencing and those were the boxes she said that were destroyed in her home and which counsel represented to the Court."

¶27 The circuit court granted West Bend's motion to dismiss. The court noted that it had chosen to stay the case at the January 17, 2018 hearing, "until we can get at least the deposition …." After reading Laddusire's California

deposition, however, the court stated "I'm not satisfied that she's complied" with the court's prior orders. The court found that Laddusire "still doesn't want to commit to not having everything produced." The court did not believe Laddusire's attorneys were at fault and contrasted this matter with cases where "the client is blameless." The court found, "in my opinion I don't believe Ms. Laddusire can credibly claim to be blameless in this case." The court further found it was "the aggregate of all of the noncompliance from Ms. Laddusire" that warranted dismissal. "[I]t's just an aggregate in the last couple of years that's really caused the Court concern." The court again reviewed the costs and objection received, and it allowed the money being held by the clerk of courts to be released to West Bend's attorney. Laddusire now appeals.

## DISCUSSION

¶28    A circuit court has broad discretion to impose sanctions in response to a failure to prosecute, a failure to comply with statutes governing civil procedure, or a failure to obey a court order. *See* WIS. STAT. § 805.03 (2017-18)[1]; *Selmer Co. v. Rinn*, 2010 WI App 106, ¶35, 328 Wis. 2d 263, 789 N.W.2d 621. A range of sanctions is available, including dismissal of an action or any part thereof. WIS. STAT. § 804.12(2)(a)3. Therefore, our standard of review in this appeal is deferential. We will sustain a discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and reached a conclusion a reasonable judge could reach while using a demonstrated rational process. *Selmer*, 328 Wis. 2d 263, ¶35.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶29    A circuit court's sanction of dismissal is proper if the sanctioned party has acted egregiously or in bad faith. *Industrial Roofing Serv. v. Marquardt*, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898. Failure to comply with circuit court scheduling and discovery orders without a clear and justifiable excuse is egregious conduct. *Id.* This is true even if the conduct was unintentional. *See Selmer Co.*, 328 Wis. 2d 263, ¶36. The burden to show that an excuse is clear and justifiable is on the party challenging the dismissal. *Prahl v. Brosamle*, 142 Wis. 2d 658, 666, 420 N.W.2d 372 (Ct. App. 1987). We will generally look for reasons to sustain a discretionary decision. *Steinbach v. Gustafson*, 177 Wis. 2d 178, 185, 502 N.W.2d 156 (Ct. App. 1993).

¶30    Laddusire argues she made reasonable efforts to comply with West Bend's discovery requests and provided "a true and accurate affidavit about her knowledge of documents to be provided." Laddusire also argues that "[n]othing in the record supports a finding that Laddusire's delayed responses or cancelled depositions were 'deliberate' or 'intentional.'" Laddusire claims her actions "cannot be deemed to be implicitly egregious" or done in bad faith, and therefore were not extreme enough to warrant dismissal. She insists her actions required a less severe sanction.

¶31    Laddusire fails to appreciate our standard of review. Here, the circuit court's decision adequately established that the aggregate of Laddusire's failures to comply with discovery and court orders provided a reasonable basis for a dismissal sanction. When granting the motion for sanctions, the circuit court noted, "I was going to pull the trigger on this case in January to be really honest because of the deposition issues and the lack of production and just really dragging this case along." The court characterized Laddusire's lawsuit as "ancient even by civil case standards." Indeed, the court had initially entered a dismissal

13

order—subject to a showing of cause—due to inactivity after Laddusire had commenced the case and claimed losses of "hundreds of thousands of dollars," but then she let the case sit dormant for almost a year.

¶32     The circuit court found that Laddusire engaged in extreme, substantial, and persistent failures to prosecute the case and comply with court orders.  Laddusire failed to comply with the expert witness deadline in the first scheduling order.  She also failed to timely answer seven of eight sets of discovery served upon her, despite clear statutory deadlines.  The only discovery she timely answered contained nothing but the same repeated objection:  "objection … is that they're not calculated to lead to relevant information," which resulted in a court order compelling responses.

¶33     Moreover, eight depositions were noticed in this case but Laddusire attended only two.  Laddusire attended one voluntarily but failed to bring the documentation she was commanded to produce.  Her attendance at the other deposition was compelled by court order.  However, that order required Laddusire to appear for a Wisconsin deposition within sixty days or a California deposition with her paying in advance all costs and expenses associated with West Bend's travel to California.  The order warned that dismissal could be a sanction for noncompliance.  Laddusire neither attended the deposition within the allotted time, nor did she seek to enlarge the time to comply with the court's order.

¶34     The six depositions Laddusire failed to attend were all cancelled because of her purported inability to travel, or her failure to produce discovery—all with a week or less of notice to West Bend.  For the five depositions Laddusire cancelled because she was allegedly unable to travel, only two cancellations were sufficiently supported by medical evidence.  Two other healthcare notes fail to

provide a sufficient medical basis for missed depositions, untimely discovery responses, or failures to comply with court orders. Laddusire herself never conducted a single deposition.

¶35 Laddusire's failures to comply with discovery also resulted in motions to compel on two separate occasions. As West Bend explained, "We have our information that suggests she either doesn't own the property, never did, that she gave the property away, that she lost it in the divorce, that she sold it to other people, or that the property simply never existed." Not surprisingly, West Bend requested proof of purchases, sale documents, cancelled checks, receipts, and other written documentation of purchases, and purchase price, for each item claimed as an insurance loss. Laddusire's objections to the requested discovery on relevance grounds were baseless, and after the second motion to compel, the circuit court ordered Laddusire to produce the discovery and signed disclosures. Yet, Laddusire failed to obey this order despite having over two years to do so. She also failed to produce the camera she supposedly could not find but apparently gave to her attorney.

¶36 The three banker boxes of documents were also never produced. At her California deposition, Laddusire sought to invoke a pro se "attorney-client privilege" over the documents already subject to the order to compel, and she made a statement that the documents "will not be turned over to you." The circuit court noted this conduct in its decision granting the motion to dismiss:

> And the deposition was, yes, they spent a lot of time asking her about other things and it was—as I'm reading it, I'm, like, thinking to myself, my gosh, she still has things that have not been produced and then out of the blue she mentions attorney/client privilege. That's never been raised before. And I don't know where she got that from ….

15

¶37     Contrary to Laddusire's argument, the record provides a reasonable basis for the circuit court to question Laddusire's credibility.   In her 2018 affidavit, Laddusire averred that she had provided all documentation to defense counsel and had "no further documentation in [her] possession which supports my claims."   Despite this assertion, the court specifically emphasized that Laddusire was unwilling at her subsequent California deposition "to commit to not having everything produced."   Quite simply, Laddusire did not convince the court that her explanations amounted to clear and justifiable excuses for her noncompliance.  We are satisfied the court properly exercised its discretion by finding that Laddusire's egregious conduct warranted dismissal of this case.

¶38     Laddusire also argues the circuit court erroneously exercised its discretion by releasing the $3500.00 she had previously deposited with the court to pay West Bend's attorney fees for attending the California deposition.   She contends that although West Bend provided supporting documents for its other expenses, "it conveniently left out any documents supporting its estimate of attorney's fees."   Laddusire argues that itemized statements showing West Bend's attorney's billed hours and hourly rate were necessary, at a minimum, for the court to assess the reasonableness of the fee request.

¶39     When a circuit court awards attorney fees, we give deference to the court's decision because it is familiar with local billing norms and will likely have witnessed first hand the quality of the services rendered by counsel.  ***Kolupar v. Wilde Pontiac Cadillac, Inc.***, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W.2d 58. Thus, we do not substitute our judgment for the judgment of the circuit court, but instead we probe the court's explanation to determine if the court employed a logical rationale based on the appropriate legal principles and facts of record.  ***Id.***

¶40 Laddusire's only objection to the circuit court's order was that the court should not release the $3500.00 until West Bend provided information as to the "hourly rate and number of hours" supporting it.[2] In response, West Bend disclosed that its counsel spent "[t]wo nine-hour travel days" going to and from California and "two hours of travel within California on the day of the deposition." Without more, the court could have deduced that the $3500.00 estimate came from twenty hours of attorney time billed at no greater than $175 per hour.

¶41 We do not discern Laddusire to argue that West Bend's attorney expended an unreasonable number of hours traveling for the California deposition or that an hourly rate of $175 was unreasonable. Rather, Laddusire argues the lack of further documentation indicates "there is nothing in the record to show that the court made any findings of reasonableness."

¶42 However, if a circuit court fails to set forth the reasoning behind its exercise of discretion, we need not reverse if an independent review of the record reveals a basis for sustaining the court's action. *State v. Pittman*, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993). After the California deposition, West Bend submitted travel papers and receipts that validated travel over three days—including round-trip flights to California; early arrival and lay-over times; driving to and from airports; checking in and out of the hotel; picking up a rental car; and the commute to and from the location where the deposition occurred in

---

[2] Laddusire does not claim any errors in the circuit court's initial decision to impose a sanction, its choice of a fee-shifting sanction, or its estimate-and-deposit procedure for securing Laddusire's prepayment. Her only claim of error is the release of the $3500.00 for attorney fees over her objection.

Los Angeles. In all, the submissions are adequate to calculate a lodestar figure to evaluate the reasonableness of a $3500.00 attorney fees request.

¶43 While the circuit court did not make detailed factual findings, the court gave a "concise but clear" statement that $3500.00 was a "conservative" figure and that after review of the cost request and objections, it would allow the amount as a "fair and reasonable reimbursement" for the travel fees caused by the California deposition. *See Kolupar*, 275 Wis. 2d 1, ¶45. Our independent record review supports the court's order. As mentioned, circuit courts are given deference because they are familiar with local billing norms and will likely have witnessed first-hand the quality of the services rendered by counsel. *Id.*, ¶15. Here, the court had already witnessed first hand the services West Bend's attorneys had provided for years before the release of the $3500.00. Laddusire fails to show the court erroneously exercised its discretion in ordering the release of the $3500.00 attributed to the California deposition.[3]

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Laddusire cites *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. ___, 137 S. Ct. 1178 (2017), for the proposition that attorney fees must be compensatory rather than punitive in nature, and that a sanctioning court must establish a causal link between the litigant's misbehavior and the fees paid by the opposing party. *Goodyear* involved fee shifting under a court's inherent authority, whereas the present case involves fees pursuant to WIS. STAT. § 805.03. *See Goodyear*, 137 S. Ct. at 1183-84. *Goodyear* notes, however, a difference between inherent sanctioning authority and rule-based and statutory sanction regimes. *Id.* at 1186 n.5. Unlike sanctions under inherent authority, sanctions pursuant to statutory authority such as § 805.03 may be compensatory or noncompensatory. *See Hur v. Holler*, 206 Wis. 2d 335, 343, 557 N.W.2d 429 (Ct. App. 1996). In any event, the circuit court's order requiring the California deposition and the deposit of funds regarding costs and fees for West Bend's attorneys was compensatory and was caused by Laddusire's actions.